UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 21-50289-PWB |
| | ) | |
| BRIDGET SURGRETTA TAYLOR, | ) | CHAPTER 7 |
| Debtor | ) | HON. PAUL W. BONAPFEL |
| | ) | |
| ATLANTA POSTAL CREDIT UNION, | ) | |
| Movant | ) | |
| vs. | ) | |
| | ) | |
| BRIDGET SURGRETTA TAYLOR, | ) | |
| Respondent | ) | |
| S. GREGORY HAYS, | ) | |
| Trustee | ) | |

**NOTICE OF ASSIGNMENT OF HEARING**

**NOTICE IS HEREBY GIVEN** that a Motion for Relief from Automatic Stay has been filed in the above-captioned case. In the event a hearing cannot be held within thirty (30) days from the filing of the Motion for Relief from Automatic Stay as required by 11 U.S.C.§362, Movant waives this requirement and agrees to the next earliest possible date, as evidenced by signature below. *The undersigned consents to the automatic stay remaining in effect with respect to Movant until the Court orders otherwise.*

A hearing will be held on the 7th day of April, 2021 at 10:15 am., in the Courtroom 1401, U.S. Courthouse, 75 Ted Turner Drive, SW, Atlanta, GA 30303.

Given the current public health crisis, hearings may be telephonic only. Please check the "**Important Information Regarding Court Operations During COVID-19 Outbreak**" tab at the top of the GANB Website prior to the hearing for instructions on whether to appear in person or by phone.

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney. If you do not want the court to grant the relief sought in these pleadings or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. You must also mail a copy of your response to the undersigned at the address stated below.

This 11th day of March, 2019.

/s/ David C. Whitridge
**DAVID C. WHITRIDGE**
Georgia State Bar No. 754793

For the Firm of
THOMPSON, O'BRIEN, KEMP & NASUTI, P.C.
40 Technology Parkway South, Suite 300
Peachtree Corners, Georgia 30092
(770) 925-0111
dwhitridge@tokn.com
Attorneys for Atlanta Postal Credit Union

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 21-50289-PWB |
| | ) | |
| BRIDGET SURGRETTA TAYLOR, | ) | CHAPTER 7 |
| Debtor | ) | HON. PAUL W. BONAPFEL |
| | ) | |
| ATLANTA POSTAL CREDIT UNION, | ) | |
| Movant | ) | |
| vs. | ) | |
| | ) | |
| BRIDGET SURGRETTA TAYLOR, | ) | |
| Respondent | ) | |
| S. GREGORY HAYS, | ) | |
| Trustee | ) | |

## MOTION FOR RELIEF FROM AUTOMATIC STAY

**NOW COMES** ATLANTA POSTAL CREDIT UNION ("APCU"), a creditor in this proceeding, and respectfully shows the Court as follows:

1.

The Debtor filed a petition for relief under Chapter 13 on January 13, 2021. The case was converted to chapter 7 on March 9, 2021. The Bankruptcy Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §157 and 11 U.S.C. §362.

2.

APCU retains a security interest in a 2015 DODGE RAM, (VIN 1C6RR6FG3FS646495) (the "Dodge") by virtue of a Certificate of Title and pursuant to a Security Agreement—Advance Receipt and Truth-In-Lending Statement ("Note"), collectively attached as Exhibit "A".

3.

The Dodge secures an additional loan with APCU. The Note payoff is approximately $9,121.04 and a cross-collateralized personal loan has an approximate payoff balance of $2,617.11.

4.

The Debtor values the Dodge at $16,800 and the current NADA value of the Vehicle is $18,200. After accounting for the APCU payoffs ($9,121.04 and $2,617.11), any costs of sale, and the Debtor's $7,597.00 exemptions, there is no equity in the Vehicle for the benefit of the Bankruptcy Estate.

5.

The Debtor has failed to make payments to APCU. The loan is due for the October 15, 2020 payment and subsequent payments, each in the amount of $428.00. The stay should be terminated for cause.

6.

The automatic stay of 11 U.S.C. §362 should be terminated to permit APCU to exercise its rights pursuant to state law as to the Vehicle.

7.

The Vehicle is not necessary for the adequate reorganization of the Debtor. The Vehicle is burdensome to the estate and of inconsequential value and should be abandoned and the 14-day requirement pursuant to F.R.B.P. 4001(a)(3) should be waived.

8.

The 14-day requirement pursuant to F.R.B.P. 4001(a)(3) should be waived.

**WHEREFORE,** APCU moves this Court for an order terminating the automatic stay pursuant to 11 U.S.C. §362 as to the Vehicle and for such other and further relief the Court deems

just and proper.

        RESPECTFULLY SUBMITTED this 11th day of March, 2021.

                                              /s/ David C. Whitridge
                                              **DAVID C. WHITRIDGE**
                                              Georgia State Bar No. 754793

For the Firm of
THOMPSON, O'BRIEN, KEMP & NASUTI, P.C.
40 Technology Parkway South, Suite 300
Peachtree Corners, Georgia 30092
(770) 925-0111
dwhitridge@tokn.com
Attorneys for Atlanta Postal Credit Union

## **CERTIFICATE OF SERVICE**

This is to certify that I have on this day electronically filed the foregoing Motion for Relief from Automatic Stay and Notice of Hearing using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program: Matthew Thomas Berry and Chapter 7 Trustee, S. Gregory Hays.

I further certify that on this day I caused a copy of this document to be served via U.S. First Class Mail, with adequate postage prepaid on the Debtors at the following address:

Bridget Surgretta Taylor
3947 Veracruz Court
Decatur, GA 30034

This 11th day of March, 2021.

/s/ David C. Whitridge
**DAVID C. WHITRIDGE**
Georgia State Bar No. 754793

For the Firm of
THOMPSON, O'BRIEN, KEMP & NASUTI, P.C.
40 Technology Parkway South, Suite 300
Peachtree Corners, Georgia 30092
(770) 925-0111
dwhitridge@tokn.com
Attorneys for Atlanta Postal Credit Union

DocuSign Envelope ID: EA492410-CD62-4DD5-8C92-4C6B19A11109


**Atlanta Postal Credit Union**

3900 Crown Road
Atlanta GA 30380-0001


EXHIBIT A

**SECURITY AGREEMENT- ADVANCE RECEIPT AND TRUTH-IN-LENDING STATEMENT**

| BORROWER'S/OWNER'S NAME AND ADDRESS | | | DATE |
|---|---|---|---|
| BRIDGET S TAYLOR | 3947 VERACRUZ CT | DECATUR, GA 30034 | 5/16/2017 |
| CO-BORROWER'S/OWNER'S NAME AND ADDRESS | | | ACCOUNT NUMBER ▮40-03 |
| NON-BORROWER OWNER'S NAME | | | MATURITY DATE 5/15/2022 |

### SECURITY INFORMATION

THE FOLLOWING PROPERTY IS GIVEN AS COLLATERAL TO SECURE THE DEBT DESCRIBED HEREIN. THE ADVANCE IS ALSO SECURED BY BORROWER'S SHARES, ALL PROPERTY SECURING OTHER PLAN ADVANCES AND LOANS RECEIVED IN THE PAST OR IN THE FUTURE:

| SHARES PLEDGED: | ACCOUNT NUMBER | AMOUNT $ | ACCOUNT NUMBER | AMOUNT $ |
|---|---|---|---|---|
| MOTOR VEHICLE: | YEAR 2015 | MAKE DODGE | MODEL RAM 1500 PICKUP-V8 | BODY TYPE | SERIAL or VIN NUMBER 1C6RR6FG3FS646495 |
| | VALUE $ 26,175.00 | | | AMOUNT OF LIEN (TOTAL OF PAYMENTS) $ 25,621.04 | |
| OTHER COLLATERAL: | | | | AMOUNT OF LIEN (TOTAL OF PAYMENTS) $ | |

### CREDIT INFORMATION

| ANNUAL PERCENTAGE RATE: The cost of your credit as a yearly rate. | FINANCE CHARGE: The dollar amount the credit will cost you. | Amount Financed: The amount of credit provided to you or on your behalf. | Total of Payments: The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 4.990 %* | $ 2,982.41 | $ 22,638.63 | $ 25,621.04 |

*Share Secured Loan: If this is a Share Secured loan, the Annual Percentage Rate disclosed above may increase or decrease during the term of this transaction if the Credit Union's share rate increases or decreases. The Annual Percentage Rate will be equal to the share rate plus 2%. An increase or decrease will take effect on the first day of each quarter (January 1, April 1, July 1, October 1). The Annual Percentage Rate will never be lower than 2% or more than 18% or the maximum rate allowed by law. Any increase will take the form of more payments of the same amount. Example: If your loan was $10,000 at 6.00% for 120 months and the rate increased to 6.25% after 3 years, you would have to make 2 additional payments.

*Certificate Secured Loan: If this is a Certificate Secured loan, the Annual Percentage Rate disclosed above may increase or decrease during the term of this transaction if the Credit Union's Certificate of Deposit rate increases or decreases. The Annual Percentage Rate will be equal to the certificate rate plus 2%. An increase or decrease will take effect on the day the certificate is renewed. The certificate must be either renewed until the advance is paid or be rolled over into a share account, at which point the advance will become a Share Secured advance and be subject to those terms. Failure to renew the Certificate or roll it over will result in default under the Plan. The Annual Percentage Rate will never be lower than 2% or more than 18% or the maximum rate allowed by law. Any increase will take the form of more payments of the same amount. Example: If your loan was $10,000 at 6.00% for 120 months and the rate increased to 6.25% after 3 years, you would have to make 2 additional payments.

Your payment schedule will be:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE |
|---|---|---|
| 59 | $ 428.00 | MONTHLY beginning 6/15/2017 |
| 1 | $ 369.04 | 5/15/2022 |

Security: You are giving a security interest in your shares and deposits in the credit union, as well as the collateral described above. Collateral for other loans with us will also secure this loan.

| Late Charges: If a payment is received more than 10 days after the due date, you will be charged $20.00. | Required Deposit Balance: The Annual Percentage Rate does not take into account your required deposit balance. |
|---|---|
| Property Insurance: You may obtain property insurance from anyone you want that is acceptable to us. If you do not obtain property insurance we will provide it at your cost. | Filing Fee: $ 0.00 |
| Prepayment: If you pay off early, you will not have to pay a penalty. | See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties. |
| "e" means estimate. | |

| ITEMIZATION OF AMOUNT FINANCED OF | $ 22,638.63 | Amount Paid to Others on Your Behalf (Describe) | | | |
|---|---|---|---|---|---|
| AMOUNT GIVEN TO YOU DIRECTLY | $ 22,239.63 | GAP To: (a portion will be retained by us) | Warranty To: (a portion will be retained by us) | CHASE AUTO FINANCE-$22239.93 | |
| AMOUNT PAID ON YOUR ACCOUNT | $ 0.00 | | | | |
| PREPAID FINANCE CHARGE | $ 0.00 | $ 399.00 | $ 0.00 | $ | $ |

**Debt Protection:** Thank you for purchasing optional debt protection on your Consumer Lending Plan. The Total Estimated Fee for this loan is $ $0.00 _____, and is included in the payment schedule disclosed above. We will retain a portion of this amount. Yes! I confirm that I want optional debt protection on this advance. _____

Borrower Initial       Co-Borrower Initial (if joint coverage)

**Returned Payment Fee:** We will charge you $____ if your payment is returned unpaid for any reason.

9016 LASER FPDF FI14572 Rev 10-2016          page 1 of 3          COPYRIGHT 2009 Securian Financial Group, Inc. All rights reserved.

DocuSign Envelope ID: EA492410-CD62-4DD5-8C92-4C6B19A11109

| BORROWER NAME | ACCOUNT NUMBER |
|---|---|
| BRIDGET S TAYLOR | ▓▓▓440 |

By signing below, Borrower agrees to abide by the terms of the Credit Agreement and all owners **GRANT TO THE CREDIT UNION A SECURITY INTEREST IN THE PROPERTY DESCRIBED ABOVE** and agree to abide by the terms of the Security Agreement. This pledge of security is governed by the attached Security Agreement. Property given as security for this loan or for any other loan will secure all amounts you owe the Credit Union now and in the future. This includes a security interest in all your shares in the Credit Union. However, for purposes of this advance, the Credit Union specifically waives any security interest it may have in your dwelling as explained in the Security Agreement. Non-purchase money household goods will not secure future advances. By signing below, Non-Borrower Owner agrees to abide by the terms of the Security Agreement and grants to the Credit Union a security interest in the property described above.

**NOTICE TO CONSUMER: THIS IS A CONSUMER CREDIT TRANSACTION. (A) DO NOT SIGN ANYTHING BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. (B) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. (C) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT.**

**THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

CAUTION- IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

| ☒ BORROWER/OWNER ☐ NON-BORROWER/OWNER | DATE | ☐ BORROWER/OWNER ☐ NON-BORROWER/OWNER | DATE |
|---|---|---|---|
| DocuSigned by: X BRIDGET S TAYLOR | 5/16/2017 \| 5:02:02 EDT | X | |
| ☐ BORROWER/OWNER ☐ NON-BORROWER/OWNER —035888B7DD2845E... | DATE | ☐ BORROWER/OWNER ☐ NON-BORROWER/OWNER | DATE |
| X | | X | |

☐ **CONSUMER'S CLAIMS AND DEFENSES NOTICE - IF CHECKED, SEE NOTICE BELOW**

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

### IMPORTANT DISCLOSURES FOR ACTIVE MEMBERS OF THE MILITARY AND THEIR DEPENDENTS:

*The following applies to members of the military and their dependents if:* (a) at the time your advance is made, you are an active member of the military or you are a dependent of an active member of the military (as those terms are defined in the Military Lending Act, 10 U.S.C. 987 and its implementing regulations); and (b) your advance is unsecured or secured by personal property that you did not purchase with the proceeds of the advance.

1. **NOTICE:** Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: the costs associated with credit insurance premiums or debt protection fees; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account). To receive this notice verbally, please call 1-800-849-2728, option 8, 24 hours a day, 7 days a week.
2. This advance will not be secured by a consensual lien on shares or deposits in any of your accounts unless you specifically agree to establish an account in connection with this advance ("Secured Account"). Only funds deposited into the Secured Account after the advance is made will secure this advance. Any cross-collateralization provision contained in your credit or membership documents will not apply to this advance or the Secured Account.
However, with regard to this advance, we still reserve our statutory lien rights and any resulting rights to set-off or administrative freeze under federal or state law, which gives us the right to apply the sums in the Secured Account or any other account(s) you have with us to satisfy your obligations under this advance.
Any contract terms in your credit, security, or membership agreements that contradict the above with regard to this advance are hereby deleted.
3. Your advance is not subject to mandatory arbitration and therefore any reference to mandatory arbitration in this Credit Agreement and Security Agreement shall not apply to your advance.
4. If you are a Louisiana resident, the Louisiana-specific provisions contained in the Security Agreement do not apply to your advance.

"YOU" OR "YOURS" MEANS EACH PERSON WHO SIGNED THIS SECURITY AGREEMENT ON PAGE 1. "WE" OR "OURS" MEAN THE CREDIT UNION NAMED ON PAGE 1 OF THIS SECURITY AGREEMENT. "BORROWER" MEANS THE BORROWER NAMED ON PAGE 1 OF THIS SECURITY AGREEMENT.

### SECURITY AGREEMENT

**Security Interest; Description of Collateral:** By signing this Security Agreement, and/or by accessing, using, or otherwise accepting any funds, accounts or services under Borrower's Consumer Lending Plan, you grant us a security interest in all goods, property, or other items purchased under this Plan (hereinafter referred to as "Collateral") either now or in the future, or in any other property given in connection with the Plan. Any required description of the Collateral shall appear on the Advance Receipt or similar document and is hereby incorporated by reference. The security interest includes all increases, substitutions and additions to the Collateral, proceeds from any insurance on the Collateral and all earnings received from the Collateral. The security interest also includes all accessions. Accessions are things which are attached to or installed in the property now or in the future. The security interest also includes any replacements for the property which you buy within 10 days of the Advance or any extensions, renewals or refinancing of the Advance. If the value of the Collateral declines, you promise to give us more security if asked to do so. You also agree to abide by the terms of the Security Agreement and any Advance Receipt or similar document.

**CONSENSUAL PLEDGE of SHARES; Consensual Lien; Statutory Lien; Right to Set-off; Administrative Freeze:** By signing this Security Agreement, you grant us, and we impress, a lien on your shares in the Credit Union. We also have similar statutory lien rights in your shares under the Federal Credit Union Act and/or applicable state law, as well as the common law right to set-off and administrative freeze. "Shares" and "share accounts" means any and all funds, regardless of the source of those funds, in any joint or individual account held and whether your obligation under the account(s) is direct, indirect, contingent or secondary and whether held now or in the future. Your pledge and our lien rights do not include any IRA, Keogh or other account which would lose special tax treatment if pledged, or any irrevocable trust or fiduciary account in which you do not have vested ownership interest.

If you default, we may apply the funds in your share accounts to any obligations you owe us, without any legal process, court proceeding or any notice to any owner of the affected share accounts, unless applicable law so requires. You specifically agree that we have the right to place an administrative freeze on any of your share accounts subject to applicable law, and such action shall not violate 11 USC 362 or other applicable law. These rights are multiple and we can exercise one or all of them.

**CROSS-COLLATERALIZATION:** Property and/or shares given as security under this Plan or for any other loan Borrower has with us will secure any and all advances under this Plan as well as any account owner's joint or individual obligations to us, now or in the future, whether direct, indirect, contingent or secondary and arising from any loan or credit agreement, insufficient fund items; fees; cost, expenses, reasonable attorney's fees, or otherwise. However, property securing another debt will not secure advances under this Plan if such property is your primary residence, or are non-purchase money household goods.

**Release of Lien:** We will not release any lien on any collateral if Borrower is delinquent on, or in default on, any subaccount under this Plan. For example, if you are in default of your line of credit subaccount, we will not release our lien on a vehicle loan, even if the vehicle loan is current or paid in full.

**No Liability for Dishonor:** We shall not have any liability relating to the dishonor or other return of any check or other item occurring as a result of us exercising our lien rights or good-faith freezing of your accounts.

**Ownership of the Collateral:** If you are granting a security interest in property you already own, you promise that the property is free of all security interests except

page 2 of 3

DocuSign Envelope ID: EA492410-CD62-4DD5-8C92-4C6B19A11109

| BORROWER NAME | ACCOUNT NUMBER |
|---|---|
| BRIDGET S TAYLOR | ▮40 |

## SECURITY AGREEMENT

that given to us or disclosed prior to the advance. You promise that you have informed us of any and all co-owners of the Collateral and/or any other person with an interest in or claim against the property. If you are using the advance proceeds to buy the property that shall be used as Collateral, you shall use those advance proceeds for the sole purpose of buying that Collateral. You shall not sell or lease the Collateral or use it as security for a loan with another creditor until the advance is repaid. You shall not allow another security interest or lien to attach to the Collateral either by your actions or by operation of law.

**Protecting the Security Interest:** You shall take any steps necessary for us to perfect our security interest in the Collateral. If asked to do so, you shall sign a financing statement or similar instrument to perfect our security interest and/or to protect our security interest from the claims of others.

**Use and Maintenance of Collateral:** Until the advance has been paid in full, you agree to (1) use the Collateral carefully and for the purpose it was intended and keep it in good repair; (2) Obtain our written permission before making material changes to the Collateral or changing the address where the Collateral is kept; (3) allow us to inspect the Collateral; (4) Promptly notify us if the Collateral is damaged, stolen or abused; (5) Not use the Collateral for any unlawful purpose; (6) pay all taxes, assessments and liens regarding the Collateral.

**Notices:** We may meet all requirements for sending you notice of any kind if we send it to you via United States mail, at your last given address. We may also meet this requirement by delivering these notices to you electronically if you have agreed to receive notices by electronic means.

**Additional Advances:** Any additional advances made by us for the payment of taxes or assessments or liens of any kind, or premiums on insurance and the interest owing thereon shall also be secured by this agreement. Such amounts shall be added to Borrower's loan balance and the minimum payment due shall be increased or your loan term extended accordingly.

**Disposition of Collateral:** If a default under the Plan occurs, we may repossess and sell the Collateral in a lawful manner. In such case, you will at our request assemble the Collateral and make it available to us at a place of our choosing, or we may enter the premises where the Collateral is kept and take possession, subject to applicable law. We may also render the Collateral unusable. If we decide to sell the Collateral at a public sale, private sale, or otherwise dispose of the Collateral, we will provide reasonable notice if required by law and will otherwise comply with applicable state law. If we sell or otherwise dispose of the Collateral we may collect from you reasonable expenses incurred in the retaking, holding and preparing the Collateral for and arranging the sale of the Collateral, as well as any deficiency balance as allowed under applicable law. We may also collect reasonable attorney's fees and legal expenses, permitted by applicable law, incurred in connection with disposition of the Collateral. We have certain rights and legal remedies available under the Uniform Commercial Code and other applicable laws, and we may use these rights to enforce payment if you default.

**Attorney-in-Fact:** You hereby appoint us as your Attorney-in-Fact to perform any acts which we feel are necessary to protect the Collateral and our security interest.

**Survival of Obligations:** This security agreement not only binds you, but your executors, administrators, heirs and assigns.

*Applies to Louisiana residents only:*

## Louisiana law permits repossession of motor vehicles upon default without further notice or judicial process.

If the secured collateral is a motor vehicle and you are in default, we may seize and sell the motor vehicle without demand for payment or advance notice to you. Collateral other than motor vehicles may be repossessed without judicial process only as allowed by applicable Louisiana law.

For purposes of foreclosure under Louisiana executory process, you hereby confess judgment in our favor for all amounts secured by the Plan, including, but not limited to, principal, interest, late charges, costs of collection, costs of preservation of the collateral, reasonable attorney's fees, and all other amounts advanced under the Plan. We may appoint a keeper of the property in the event of foreclosure. To the extent allowed under Louisiana law, you hereby waive the following rights and procedures under Louisiana law: (a) all rights and benefit of appraisal; (b) notice of seizure; (c) the 3-day delay afforded under Articles 2331 and 2722; and (d) all other provisions under Articles 2331, 2722 and 2723 and all other Articles not specifically mentioned herein. You further agree that any declaration of fact made by authentic act by a person declaring that such facts are within his or her knowledge shall constitute authentic evidence of facts for the purposes of foreclosure under applicable Louisiana law and for the purposes of LSA-R.S. 9:3504(D)(6) and LSA-R.S. 10:9-508, to the extent applicable.

**NOTICE FOR ARIZONA OWNERS OF PROPERTY:** It is unlawful for you to fail to return a motor vehicle that is subject to a security interest within thirty days after you have received notice of default. The notice will be mailed to the address provided on this document unless you have given us a new address. It is your responsibility to notify us if your address changes. The maximum penalty for unlawful failure to return a motor vehicle is one year in prison and/or a fine of $150,000.

**NORTH DAKOTA NOTICE TO BORROWERS PURCHASING A MOTOR VEHICLE** - THE MOTOR VEHICLE IN THIS TRANSACTION MAY BE SUBJECT TO REPOSSESSION. IF IT IS REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED IN THAT SALE, YOU MAY HAVE TO PAY THE DIFFERENCE.

---

**PROPERTY INSURANCE; LENDER-PLACED INSURANCE - PLEASE READ CAREFULLY**

(a) <u>Your requirement to maintain property insurance</u>. You are required to carry insurance to protect your interest and our interest in the collateral securing this loan. The insurance:
- Must protect against any loss by fire or theft, and collision and comprehensive coverage on motor vehicles and other property pledged as security on this Plan.
- Must (i) be in an amount and type sufficient to repair the collateral to its existing condition prior to the loss, and/or to replace the collateral with comparable or like property, minus depreciation, if it is damaged or lost; or (ii) be in an amount and type as we might otherwise inform you that we require.
- Must have a maximum deductible as set forth by us.
- Must be maintained in force for as long as the loan is outstanding.
- Must name us as loss payee. We must receive the loss payee endorsement within 30 days of your loan date.

These requirements are solely in our discretion and we may change any of these requirements at any time for any reason. The insurance may be obtained by any insurer of your choice that is acceptable to us.

(b) <u>Lender-placed property insurance</u>. Please read carefully:
- If you fail to maintain insurance satisfying the requirements set forth above, or if you fail to provide us proof of such coverage, we may, but do not have to, obtain insurance to protect our interest (not yours) in the property.
- The total cost of lender-placed insurance will be added to the loan balance. The total cost of this insurance includes, but is not limited to, the premium, any administrative costs we incur, any commissions that may be earned, and other reasonable expenses related to your failure to maintain insurance. This cost will be paid by you either on demand, or by increasing your periodic payment, or by extending the loan term.
- Whether we obtain insurance, and the amount and types of coverage that we may obtain, is solely in our discretion. We may obtain this insurance from anyone we want, including an affiliate of ours, and such affiliate may earn a commission on the coverage.
- The insurance placed by us is without benefit to you personally, and is primarily for our protection. It may not adequately protect your interest in the collateral or any personal property contained in the collateral, and will not satisfy any mandatory liability or financial responsibility requirements under state law.
- Coverage obtained by us may be considerably more expensive than coverage you could obtain on your own and may be different than previous policies you may have had or policies that you may prefer.
- Any insurance placed by us will be effective as of the date your policy lapsed or, if you never obtained insurance, the date of the loan.
- Nothing in this agreement is intended to confer third-party beneficiary rights or status to you with respect to any agreements between us and our insurer or its agent.

(c) <u>How to remove lender-placed property insurance</u>. You may have the lender-placed coverage cancelled at any time by providing evidence to us that you have purchased insurance coverage satisfying the requirements set forth above. If you do so, you will receive a refund of any unearned premiums and finance charges on the lender-placed coverages and your loan balance will be adjusted accordingly.

(d) <u>Other</u>. You assign us the right to receive and endorse any insurance proceeds check, to apply those proceeds to the sums you owe, and you direct any insurer to pay those proceeds directly to us. You further authorize us or our representative to obtain the necessary information for verification of adequate coverage. We, or our affiliates, may receive compensation or reimbursement of expenses related to any insurance premiums added by us.

(e) <u>Default</u>. If you fail to maintain insurance as set forth in this provision, you will be in default of your loan. We may either place our own insurance on the collateral as explained above, or we can declare you in default and take all remedies set forth in your loan agreement or available to us under applicable law, including calling the loan immediately due.

9016 8-2012

Account View                                                                                           Page 1 of 1

*158440-03*
*USED*
*5-16-17*

**dealertrack**

Search  Work Queues  Reports  Utilities  User Setup

title management system
Atlanta Postal Credit Union

Home  Help  Resources  Contact  Log out

Perfected

## Account

VIN/HIN: 1C6RR6FG3FS646495   Status: Perfected (PT)   Titling State: GA   Year: 2015
Account: 158440-03   Loan:   LoanSuffix:   Branch: ATLANTA POSTAL CREDIT UNION   Make: RAM   Model:

Primary customer: TAYLOR, BRIDGET SURGETTA
Secondary customer:
Home phone:
Address:
DECATUR, GA 300345109
Alert when perfected: ☐ Client ☐ CMS
User Defined 1:
User Defined 2:
User Defined 3:
Lienholder Status Code:
Business Unit:
Dealer ID/Name:

Recovery type:
Recovery Status date:
Amount Financed: 22638.63
Financed date: 05/16/2017
Booked date: 05/16/2017
Expected payoff date:
Payoff date:
Perfected date: 7/26/2017
Loan Balance
State: GA
Account subtype: Loan (F)
Expected Contract Type:

## Title

Owner(s): BRIDGET SURGETTA TAYLOR
Lienholder: ATLANTA POSTAL CREDIT UNION
Match Type: MANUAL
Match Date: 7/26/2017
Issuance Date: 7/26/2017
Imported Date: 7/26/2017

Closed Date:
Closed Reason:
Document Location:
State Cancel Reason:

## Notes (Date/Time stamps in this section reflect Pacific Time)

⦿ Show All  ◯ Show User Notes Only  ◯ Show Activity History Only

| Date | User | Context | Activity | Note |
|---|---|---|---|---|
| 07/26/2017 08:54 AM | Shelly Brehon | GUI | Update Account | Account created from existing title. |
| 07/26/2017 08:54 AM | Shelly Brehon | GUI | Create Account | Account created via the GUI. |
| 07/26/2017 08:54 AM | Shelly Brehon | GUI | Perfect Account | Account and Document were automatically matched. |
| 07/26/2017 08:31 AM | System | State Import | Create Title | Received electronic document from State. |

https://title.fdielt.com/AccountView/AccountCollateralView.aspx?view=AccountCollatera...   7/26/2017

DocuSign Envelope ID: CF7E025B-8946-493D-9B57-EC1FDCCEDCAF



**Atlanta Postal Credit Union**
3900 Crown Road
Atlanta GA 30380-0001

**SECURITY AGREEMENT-
ADVANCE RECEIPT AND TRUTH-
IN-LENDING STATEMENT**

| BORROWER'S/OWNER'S NAME AND ADDRESS | | | DATE |
|---|---|---|---|
| BRIDGET S TAYLOR | 3947 VERACRUZ CT | DECATUR, GA 30034 | 1/17/2019 |
| CO-BORROWER'S/OWNER'S NAME AND ADDRESS | | | ACCOUNT NUMBER ▮▮▮▮40-05 |
| NON-BORROWER OWNER'S NAME | | | MATURITY DATE 1/20/2022 |

### SECURITY INFORMATION

THE FOLLOWING PROPERTY IS GIVEN AS COLLATERAL TO SECURE THE DEBT DESCRIBED HEREIN. THE ADVANCE IS ALSO SECURED BY BORROWER'S SHARES, ALL PROPERTY SECURING OTHER PLAN ADVANCES AND LOANS RECEIVED IN THE PAST OR IN THE FUTURE:

| SHARES PLEDGED: | ACCOUNT NUMBER | | AMOUNT $ | ACCOUNT NUMBER | | AMOUNT $ |
|---|---|---|---|---|---|---|
| MOTOR VEHICLE: | YEAR | MAKE | MODEL | BODY TYPE | SERIAL or VIN NUMBER | |
| | VALUE $ | | | AMOUNT OF LIEN (TOTAL OF PAYMENTS) $ | | |
| OTHER COLLATERAL: | | | | | | AMOUNT OF LIEN (TOTAL OF PAYMENTS) $ |

### CREDIT INFORMATION

| ANNUAL PERCENTAGE RATE: The cost of your credit as a yearly rate. 15.900 %* | FINANCE CHARGE: The dollar amount the credit will cost you. $ 1,123.69 | Amount Financed: The amount of credit provided to you or on your behalf. $ 4,200.00 | Total of Payments: The amount you will have paid after you have made all payments as scheduled. $ 5,572.48 |
|---|---|---|---|

*Share Secured Loan: If this is a Share Secured loan, the Annual Percentage Rate disclosed above may increase or decrease during the term of this transaction if the Credit Union's share rate increases or decreases. The Annual Percentage Rate will be equal to the share rate plus 2%. An increase or decrease will take effect on the first day of each quarter (January 1, April 1, July 1, October 1). The Annual Percentage Rate will never be lower than 2% or more than 18% or the maximum rate allowed by law. Any increase will take the form of more payments of the same amount. Example: If your loan was $10,000 at 6.00% for 120 months and the rate increased to 6.25% after 3 years, you would have to make 2 additional payments.

*Certificate Secured Loan: If this is a Certificate Secured loan, the Annual Percentage Rate disclosed above may increase or decrease during the term of this transaction if the Credit Union's Certificate of Deposit rate increases or decreases. The Annual Percentage Rate will be equal to the certificate rate plus 2%. An increase or decrease will take effect on the day the certificate is renewed. The certificate must be either renewed until the advance is paid or be rolled over into a share account, at which point the advance will become a Share Secured advance and be subject to those terms. Failure to renew the Certificate or roll it over will result in default under the Plan. The Annual Percentage Rate will never be lower than 2% or more than 18% or the maximum rate allowed by law. Any increase will take the form of more payments of the same amount. Example: If your loan was $10,000 at 6.00% for 120 months and the rate increased to 6.25% after 3 years, you would have to make 2 additional payments.

Your payment schedule will be:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE |
|---|---|---|
| 35 | $ 156.00 | MONTHLY beginning 2/20/2019 |
| 1 | $ 112.48 | 1/20/2022 |

| Security: You are giving a security interest in your shares and deposits in the credit union, as well as the collateral described above. Collateral for other loans with us will also secure this loan. | Filing Fee: $ 0.00 |
|---|---|

| Late Charges: If a payment is received more than 10 days after the due date, you will be charged $20.00. | Required Deposit Balance: The Annual Percentage Rate does not take into account your required deposit balance. | Property Insurance: You may obtain property insurance from anyone you want that is acceptable to us. If you do not obtain property insurance we will provide it at your cost. |
|---|---|---|

| Prepayment: If you pay off early, you will not have to pay a penalty. | See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties. |
|---|---|
| "e" means estimate. | |

| ITEMIZATION OF AMOUNT FINANCED OF | $ 4,200.00 | Amount Paid to Others on Your Behalf (Describe) | | | |
|---|---|---|---|---|---|
| AMOUNT GIVEN TO YOU DIRECTLY | $ 1,025.31 | GAP To: (a portion will be retained by us) | Warranty To: (a portion will be retained by us) | | |
| AMOUNT PAID ON YOUR ACCOUNT | $ 3,174.69 | $ | $ | $ | $ |
| PREPAID FINANCE CHARGE | $ 0.00 | | | | |
| $ | $ | $ | $ | $ | $ |

**Debt Protection:** Thank you for purchasing optional debt protection on your Consumer Lending Plan. The Total Estimated Fee for this loan is $ $248.79 , and is included in the payment schedule disclosed above. We will retain a portion of this amount. Yes! I confirm that I want optional debt protection on this advance.

—DS
Borrower Initial *BST* /  _____
                           Co-Borrower Initial (if joint coverage)

**Returned Payment Fee:** We will charge you $32.00 if your payment is returned unpaid for any reason.

9016 LASER FPDF FI14572 Rev 4-2018          page 1 of 3          COPYRIGHT 2009 Securian Financial Group, Inc. All rights reserved.

DocuSign Envelope ID: CF7E025B-8946-493D-9B57-EC1FDCCEDCAF

| BORROWER NAME | ACCOUNT NUMBER |
|---|---|
| BRIDGET S TAYLOR | 440 |

By signing below, Borrower agrees to abide by the terms of the Credit Agreement and all owners **GRANT TO THE CREDIT UNION A SECURITY INTEREST IN THE PROPERTY DESCRIBED ABOVE** and agree to abide by the terms of the Security Agreement. This pledge of security is governed by the attached Security Agreement. Property given as security for this loan or for any other loan will secure all amounts you owe the Credit Union now and in the future. This includes a security interest in all your shares in the Credit Union. However, for purposes of this advance, the Credit Union specifically waives any security interest it may have in your dwelling as explained in the Security Agreement. Non-purchase money household goods will not secure future advances. By signing below, Non-Borrower Owner agrees to abide by the terms of the Security Agreement and grants to the Credit Union a security interest in the property described above.

NOTICE TO CONSUMER: THIS IS A CONSUMER CREDIT TRANSACTION. (A) DO NOT SIGN ANYTHING BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. (B) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. (C) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT.

**THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

CAUTION- IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

| [X] BORROWER/OWNER  [ ] NON-BORROWER/OWNER | DATE | [ ] BORROWER/OWNER  [ ] NON-BORROWER/OWNER | DATE |
|---|---|---|---|
| X *Bridget S T* (DocuSigned) | 1/17/2019 | 1:50:24 EST | X | |
| [ ] BORROWER/OWNER  [ ] NON-BORROWER/OWNER — 035888B7DD2846E... | DATE | [ ] BORROWER/OWNER  [ ] NON-BORROWER/OWNER | DATE |
| X | | X | |

[ ] CONSUMER'S CLAIMS AND DEFENSES NOTICE - IF CHECKED, SEE NOTICE BELOW

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

### IMPORTANT DISCLOSURES FOR ACTIVE MEMBERS OF THE MILITARY AND THEIR DEPENDENTS:

The following applies if at the time of this advance you are a member of the military or a dependent (as those terms are defined in the Military Lending Act, 10 U.S.C. 987 and its implementing regulations), and: (a) your advance is unsecured or secured by personal property or a vehicle that you did not purchase with the proceeds of the advance; or (b) this advance is made for the purchase of a vehicle or personal property, and you also receive additional "cash out" financing (e.g., to pay off negative equity on a trade-in or you otherwise receive additional cash).

1. **NOTICE:** Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: the costs associated with credit insurance premiums or debt protection fees; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account). To receive this notice verbally, please call 1-800-849-2728, option 8, 24 hours a day, 7 days a week.
2. This advance will not be secured by a consensual lien on shares or deposits in any of your accounts unless you specifically agree to establish an account in connection with this advance ("Secured Account"). Only funds deposited into the Secured Account after the advance is made will secure this advance. Any cross-collateralization provision contained in your credit or membership documents will not apply to the Secured Account or your other share or deposit accounts for any loan subject to the Military Lending Act.
However, with regard to this advance, we still reserve our statutory lien rights and any resulting rights to set-off or administrative freeze under federal or state law, which gives us the right to apply the sums in the Secured Account or any other account(s) you have with us to satisfy your obligations under this advance.
Any contract terms in your credit, security, or membership agreements that contradict the above with regard to this advance are hereby deleted.
3. Your advance is not subject to mandatory arbitration and therefore any reference to mandatory arbitration in this Credit Agreement and Security Agreement shall not apply to your advance.
4. If you are a Louisiana resident, the Louisiana-specific provisions contained in the Security Agreement do not apply to your advance.

"YOU" OR "YOURS" MEANS EACH PERSON WHO SIGNED THIS SECURITY AGREEMENT ON PAGE 1. "WE" OR "OURS" MEAN THE CREDIT UNION NAMED ON PAGE 1 OF THIS SECURITY AGREEMENT. "BORROWER" MEANS THE BORROWER NAMED ON PAGE 1 OF THIS SECURITY AGREEMENT.

### SECURITY AGREEMENT

**Security Interest; Description of Collateral:** By signing this Security Agreement, and/or by accessing, using, or otherwise accepting any funds, accounts or services under Borrower's Consumer Lending Plan, you grant us a security interest in all goods, property, or other items purchased under this Plan (hereinafter referred to as "Collateral") either now or in the future, or in any other property given in connection with the Plan. Any required description of the Collateral shall appear on the Advance Receipt or similar document and is hereby incorporated by reference. The security interest includes all increases, substitutions and additions to the Collateral, proceeds from any insurance on the Collateral and all earnings received from the Collateral. The security interest also includes all accessions. Accessions are things which are attached to or installed in the property now or in the future. The security interest also includes any replacements for the property which you buy within 10 days of the Advance or any extensions, renewals or refinancing of the Advance. If the value of the Collateral declines, you promise to give us more security if asked to do so. You also agree to abide by the terms of the Security Agreement and any Advance Receipt or similar document.

**CONSENSUAL PLEDGE of SHARES; Consensual Lien; Statutory Lien; Right to Set-off; Administrative Freeze:** By signing this Security Agreement, you grant us, and we impress, a lien on your shares in the Credit Union. We also have similar statutory lien rights in your shares under the Federal Credit Union Act and/or applicable state law, as well as the common law right to set-off and administrative freeze. "Shares" and "share accounts" means any and all funds, regardless of the source of those funds, in any joint or individual account held and whether your obligation under the account(s) is direct, indirect, contingent or secondary and whether held now or in the future. Your pledge and our lien rights do not include any IRA, Keogh or other account which would lose special tax treatment if pledged, or any irrevocable trust or fiduciary account in which you do not have vested ownership interest.

If you default, we may apply the funds in your share accounts to any obligations you owe us, without any legal process, court proceeding or any notice to any owner of the affected share accounts, unless applicable law so requires. You specifically agree that we have the right to place an administrative freeze on any of your share accounts subject to applicable law, and such action shall not violate 11 USC 362 or other applicable law. These rights are multiple and we can exercise one or all of them.

**CROSS-COLLATERALIZATION:** Property and/or shares given as security under this Plan or for any other loan Borrower has with us will secure any and all advances under this Plan as well as any account owner's joint or individual obligations to us, now or in the future, whether direct, indirect, contingent or secondary and arising from any loan or credit agreement, insufficient fund items; fees; cost, expenses, reasonable attorney's fees, or otherwise. However, property securing another debt will not secure advances under this Plan if such property is your primary residence, or are non-purchase money household goods.

**Release of Lien:** We will not release any lien on any collateral if Borrower is delinquent on, or in default on, any subaccount under this Plan. For example, if you are in default of your line of credit subaccount, we will not release our lien on a vehicle loan, even if the vehicle loan is current or paid in full.

**No Liability for Dishonor:** We shall not have any liability relating to the dishonor or other return of any check or other item occurring as a result of us exercising our lien rights or good-faith freezing of your accounts.

**Ownership of the Collateral:** If you are granting a security interest in property you already own, you promise that the property is free of all security interests except

| BORROWER NAME | ACCOUNT NUMBER |
|---|---|
| BRIDGET S TAYLOR | ▓▓▓▓40 |

## SECURITY AGREEMENT

that given to us or disclosed prior to the advance. You promise that you have informed us of any and all co- owners of the Collateral and/or any other person with an interest in or claim against the property. If you are using the advance proceeds to buy the property that shall be used as Collateral, you shall use those advance proceeds for the sole purpose of buying that Collateral. You shall not sell or lease the Collateral or use it as security for a loan with another creditor until the advance is repaid. You shall not allow another security interest or lien to attach to the Collateral either by your actions or by operation of law.

**Protecting the Security Interest:** You shall take any steps necessary for us to perfect our security interest in the Collateral. If asked to do so, you shall sign a financing statement or similar instrument to perfect our security interest and/or to protect our security interest from the claims of others.

**Use and Maintenance of Collateral:** Until the advance has been paid in full, you agree to (1) use the Collateral carefully and for the purpose it was intended and keep it in good repair; (2) Obtain our written permission before making material changes to the Collateral or changing the address where the Collateral is kept; (3) allow us to inspect the Collateral; (4) Promptly notify us if the Collateral is damaged, stolen or abused; (5) Not use the Collateral for any unlawful purpose; (6) pay all taxes, assessments and liens regarding the Collateral.

**Notices:** We may meet all requirements for sending you notice of any kind if we send it to you via United States mail, at your last given address. We may also meet this requirement by delivering these notices to you electronically if you have agreed to receive notices by electronic means.

**Additional Advances:** Any additional advances made by us for the payment of taxes or assessments or liens of any kind, or premiums on insurance and the interest owing thereon shall also be secured by this agreement. Such amounts shall be added to Borrower's loan balance and the minimum payment due shall be increased or your loan term extended accordingly.

**Disposition of Collateral:** If a default under the Plan occurs, we may repossess and sell the Collateral in a lawful manner. In such case, you will at our request assemble the Collateral and make it available to us at a place of our choosing, or we may enter the premises where the Collateral is kept and take possession, subject to applicable law. We may also render the Collateral unusable. If we decide to sell the Collateral at a public sale, private sale, or otherwise dispose of the Collateral, we will provide reasonable notice if required by law and will otherwise comply with applicable state law. If we sell or otherwise dispose of the Collateral we may collect from you reasonable expenses incurred in the retaking, holding and preparing the Collateral for and arranging the sale of the Collateral, as well as any deficiency balance as allowed under applicable law. We may also collect reasonable attorney's fees and legal expenses, permitted by applicable law, incurred in connection with disposition of the Collateral. We have certain rights and legal remedies available under the Uniform Commercial Code and other applicable laws, and we may use these rights to enforce payment if you default.

**Attorney-in-Fact:** You hereby appoint us as your Attorney-in-Fact to perform any acts which we feel are necessary to protect the Collateral and our security interest.

**Survival of Obligations:** This security agreement not only binds you, but your executors, administrators, heirs and assigns.

*Applies to Louisiana residents only:*

## Louisiana law permits repossession of motor vehicles upon default without further notice or judicial process.

If the secured collateral is a motor vehicle and you are in default, we may seize and sell the motor vehicle without demand for payment or advance notice to you. Collateral other than motor vehicles may be repossessed without judicial process only as allowed by applicable Louisiana law.

For purposes of foreclosure under Louisiana executory process, you hereby confess judgment in our favor for all amounts secured by the Plan, including, but not limited to, principal, interest, late charges, costs of collection, costs of preservation of the collateral, reasonable attorney's fees, and all other amounts advanced under the Plan. We may appoint a keeper of the property in the event of foreclosure. To the extent allowed under Louisiana law, you hereby waive the following rights and procedures under Louisiana law: (a) all rights and benefit of appraisal; (b) notice of seizure; (c) the 3-day delay afforded under Articles 2331 and 2722; and (d) all other provisions under Articles 2331, 2722 and 2723 and all other Articles not specifically mentioned herein. You further agree that any declaration of fact made by authentic act by a person declaring that such facts are within his or her knowledge shall constitute authentic evidence of facts for the purposes of foreclosure under applicable Louisiana law and for the purposes of LSA-R.S. 9:3504(D)(6) and LSA-R.S. 10:9-508, to the extent applicable.

**NOTICE FOR ARIZONA OWNERS OF PROPERTY:** It is unlawful for you to fail to return a motor vehicle that is subject to a security interest within thirty days after you have received notice of default. The notice will be mailed to the address provided on this document unless you have given us a new address. It is your responsibility to notify us if your address changes. The maximum penalty for unlawful failure to return a motor vehicle is one year in prison and/or a fine of $150,000.

**NORTH DAKOTA NOTICE TO BORROWERS PURCHASING A MOTOR VEHICLE** - THE MOTOR VEHICLE IN THIS TRANSACTION MAY BE SUBJECT TO REPOSSESSION. IF IT IS REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED IN THAT SALE, YOU MAY HAVE TO PAY THE DIFFERENCE.

---

**PROPERTY INSURANCE; LENDER-PLACED INSURANCE - PLEASE READ CAREFULLY**

(a) <u>Your requirement to maintain property insurance</u>. You are required to carry insurance to protect your interest and our interest in the collateral securing this loan. The insurance:

- Must protect against any loss by fire or theft, and collision and comprehensive coverage on motor vehicles and other property pledged as security on this Plan.
- Must (i) be in an amount and type sufficient to repair the collateral to its existing condition prior to the loss, and/or to replace the collateral with comparable or like property, minus depreciation, if it is damaged or lost; or (ii) be in an amount and type as we might otherwise inform you that we require.
- Must have a maximum deductible as set forth by us.
- Must be maintained in force for as long as the loan is outstanding.
- Must name us as loss payee. We must receive the loss payee endorsement within 30 days of your loan date.

These requirements are solely in our discretion and we may change any of these requirements at any time for any reason. The insurance may be obtained by any insurer of your choice that is acceptable to us.

(b) <u>Lender-placed property insurance</u>. Please read carefully:

- If you fail to maintain insurance satisfying the requirements set forth above, or if you fail to provide us proof of such coverage, we may, but do not have to, obtain insurance to protect our interest (not yours) in the property.
- The total cost of lender-placed insurance will be added to the loan balance. The total cost of this insurance includes, but is not limited to, the premium, any administrative costs we incur, any commissions that may be earned, and other reasonable expenses related to your failure to maintain insurance. This cost will be paid by you either on demand, or by increasing your periodic payment, or by extending the loan term.
- Whether we obtain insurance, and the amount and types of coverage that we may obtain, is solely in our discretion. We may obtain this insurance from anyone we want, including an affiliate of ours, and such affiliate may earn a commission on the coverage.
- The insurance placed by us is without benefit to you personally, and is primarily for our protection. It may not adequately protect your interest in the collateral or any personal property contained in the collateral, and will not satisfy any mandatory liability or financial responsibility requirements under state law.
- Coverage obtained by us may be considerably more expensive than coverage you could obtain on your own and may be different than previous policies you may have had or policies that you may prefer.
- Any insurance placed by us will be effective as of the date your policy lapsed or, if you never obtained insurance, the date of the loan.
- Nothing in this agreement is intended to confer third-party beneficiary rights or status to you with respect to any agreements between us and our insurer or its agent.

(c) <u>How to remove lender-placed property insurance</u>. You may have the lender-placed coverage cancelled at any time by providing evidence to us that you have purchased insurance coverage satisfying the requirements set forth above. If you do so, you will receive a refund of any unearned premiums and finance charges on the lender-placed coverages and your loan balance will be adjusted accordingly.

(d) <u>Other</u>. You assign us the right to receive and endorse any insurance proceeds check, to apply those proceeds to the sums you owe, and you direct any insurer to pay those proceeds directly to us. You further authorize us or our representative to obtain the necessary information for verification of adequate coverage. We, or our affiliates, may receive compensation or reimbursement of expenses related to any insurance premiums added by us.

(e) <u>Default</u>. If you fail to maintain insurance as set forth in this provision, you will be in default of your loan. We may either place our own insurance on the collateral as explained above, or we can declare you in default and take all remedies set forth in your loan agreement or available to us under applicable law, including calling the loan immediately due.